# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SUSAN MARPLE, individually and as a purported class representative, and STEPHANIE WORRELL, individually and as a purported class representative, | Case No. 10-CV-00954-NKL<br>10-CV-00955<br>10-CV-00956<br>10-CV-00957 |
| Plaintiffs, | 10-CV-00958<br>10-CV-00959 |
| v. | 10-CV-00960<br>10-CV-00961 |
| T-MOBILE CENTRAL, LLC, | 10-CV-00962<br>10-CV-00963 |
| Defendant. | |

**ORDER**

Before the Court is the Motion to Remand [Doc. # 13] filed by Plaintiffs Susan Marple and Stephanie Worrell and the members of each putative class in each action set forth in the caption above. For the following reasons, the Court grants the order and remands these actions to the Jackson County, Missouri Circuit Court.

**I.     Background**

The Defendant in these ten consolidated lawsuits, T-Mobile Central, LLC ("T-Mobile") filed ten petitions in Missouri state courts seeking judicial declarations requiring municipalities to refund to T-Mobile certain tax payments made by T-Mobile under protest. For each of those ten lawsuits filed by T-Mobile, Plaintiffs filed corresponding class actions in state court. In each of those corresponding class actions, Plaintiffs' legal theory was the

same. Plaintiffs have alleged unjust enrichment, breach of contract, and a violation of the Missouri Merchandising Practices Act. [Doc. # 1, Ex. 2.] The thrust of Plaintiffs' legal theory is that T-Mobile billed its customers for a "City License Tax" without disclosing that it was not required to pass on such tax to its customers or that it sought to recoup the tax money through its ten lawsuits because it considered the municipal taxes illegal.

Defendant T-Mobile removed these actions to federal court on October 1, 2010. [Doc. # 1.] On October 25, acting *sua sponte*, this Court ordered that the ten above-captioned actions were "consolidated for pretrial proceedings into the lowest case number 10-00954-CV-C-NKL." [Doc. # 11.] Plaintiffs filed this Motion to Remand on November 22, 2010. [Doc. # 13.]

## II. Discussion

In their Motion to Remand, Plaintiffs argue that the damages sought in the ten class actions are below the $5,000,000 threshold set by the Class Action Fairness Act ("CAFA"). [Doc. # 13 at 1-2 (citing 28 U.S.C. § 1332(d)(6).] For example, Plaintiffs' petition in the lowest case number 10-00954-CV-C-NKL seeks no more than the $962, 273.71 which it claims is the amount sought by T-Mobile in its suit 1016CV21191. [Doc. # 1, Ex. 2 at 3.]

Defendant T-Mobile does not contest Plaintiffs' assertions regarding the amount at issue in the ten class actions. Instead, T-Mobile calls on the Court to aggregate the amounts across the ten class actions, which it argues should be construed here as a single class action. To support this contention, T-Mobile relies on a teleological interpretation of the CAFA and a Sixth Circuit case, *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405 (6th Cir. 2008).

T-Mobile begins its argument by citing the legislative history to analyze the CAFA's purposes, though it does not address the statutory text until page 10 of its brief. [Doc. # 11 at 4, 10.] The Court must begin its analysis by considering the text of the statute. "It is well established that 'when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). This "plain meaning" or "plain language" rule of statutory interpretation "requires examining the text of the statute as a whole by considering its context, 'object, and policy.'" *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 899 (8th Cir. 1999) (quoting *Pelofsky v. Wallace*, 102 F.3d 350, 353 (8th Cir. 1996)). "The main effect of the [plain meaning] rule in modern statutory interpretation . . . is that it bars resort to otherwise admissible extrinsic aids, evidencing the meaning or purpose of the enacting legislators, in cases which, in the judgment of the deciding court, fall within the scope of its operation." 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 48A:15 (7th ed. 2007). In other words, only upon a finding of ambiguity is the Court permitted to analyze extrinsic evidence of Congressional intent, such as the legislative history. *Id.*

### A. The Text of the Class Action Fairness Act

The Court lacks jurisdiction over this case if Plaintiffs' claims have not met the minimal diversity of citizenship requirements established by the CAFA amendments to 28 U.S.C. § 1332. The CAFA provides, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs . . . .
>
> In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

28 U.S.C. § 1332(d)(2), (d)(6). The CAFA defines the term "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

Here, by a plain reading of the CAFA text, Plaintiffs have filed ten separate class actions. That is, there are before the Court ten civil actions filed under Missouri law authorizing an action to be brought by 1 or more representative persons as a class action. The Court's October 25 Order that the ten above-captioned actions were "consolidated for pretrial proceedings into the lowest case number 10-00954-CV-C-NKL" did not alter the fact that those actions were filed as ten class actions. [Doc. # 11.]

By a plain reading of the statutory text, the claims of the individual class members in "any class action" shall be aggregated to determine whether the matter in controversy exceeds the sum of $5,000,000. Here, by the statutory definition of "class action," Plaintiffs' claims must be aggregated only within each of the ten class actions.

B. *Freeman* and the Purposes of the Class Action Fairness Act

The Sixth Circuit's *Freeman* looked to the purposes of the CAFA to interpret an exception to the plain meaning of the text. However, *Freeman* is distinguishable because it

4

explicitly stated that its "holding is limited to the situation where there is no colorable basis for dividing up the sought-for retrospective relief into separate time periods, other than to frustrate the CAFA." 551 F.3d at 409. In contrast, here Plaintiffs filed ten class actions in response to T-Mobile's ten state court suits.

In *Freeman*, three-hundred landowners brought a nuisance claim based on water pollution from a paper mill. *Id.* at 406. The identical plaintiffs filed a total of six lawsuits against the defendant for sequential six-month periods, limiting damages in each suit to less than $4.9 million. *Id.* Here, in contrast, Plaintiffs filed one suit for each suit filed by Defendant T-Mobile, and the damages sought correspond to the damages sought by T-Mobile in each of its ten suits. Moreover, the class of Plaintiffs is not identical in each suit, but changes with the customers who paid the City Licensing Tax to T-Mobile during the relevant time periods corresponding with the T-Mobile lawsuits. [Doc. # 13 at 4.]

*Freeman* explained its teleological approach to the CAFA by reasoning that "Congress's obvious purpose in passing the statute – to allow defendants to defend large interstate class actions in federal court – can be avoided almost at will, as long as state law permits suits to be broken up on some basis." 551 F.3d at 407. *Freeman* cited purposive language in the Congressional findings accompanying the CAFA:

> CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction. The statutory language notes that "[c]lass action lawsuits are an important and valuable part of the legal system" because they allow aggregation of claims so that a defendant faces only a single action. CAFA § 2(a)(1), 28 U.S.C. § 1711 note. Furthermore, CAFA states that "there have been abuses of the class action device," including that

5

> "[s]tate and local courts are . . . keeping cases of national importance out of Federal court." *Id.* § 2(a)(4)(A).

*Id.* at 407-08.

Not all federal circuits have shared *Freeman*'s concern with plaintiffs' avoidance of federal jurisdiction under the CAFA. For example, the Fourth Circuit has reasoned:

> To be sure, the plaintiffs in this case have taken care to restrict the scope of their allegations so as to avoid federal jurisdiction under CAFA. Yet the plaintiffs, as masters of their complaint, can choose to circumscribe their class definition in this way.

*Johnson v. Advance America*, 549 F.3d 932, 937 (4th Cir. 2008) (citations omitted).

Regardless, none of *Freeman*'s concerns arise when plaintiffs file class action lawsuits in response to a defendant's own corresponding lawsuits. This is not an instance in which federal jurisdiction can be avoided at will, or where state and local courts have conspired to keep cases of national importance out of federal court. Where plaintiffs file discrete state lawsuits in reaction to a defendant's discrete state lawsuits, the defendant cannot then claim that state courts are keeping cases of national importance out of federal courts. Here, for example, Plaintiffs' claims allege violations of the Missouri Merchandising Practices Act, breach of contract, and unjust enrichment – implicating state concerns more so than national concerns.

In both *Freeman* and the unreported *Proffitt v. Abbott Labs*, No. 2:08-CV-148, 2008 WL 4401367, *1 (E.D. Tenn. Sept. 23, 2008), which it cites favorably, the plaintiffs had "no colorable basis" for breaking up their lawsuits. 551 F.3d at 407. For example, in *Proffitt*: "Other than the difficulty of making a damages disclaimer to avoid the CAFA, there appears

no reason for selecting the one-year divisions and creating eleven lawsuits to litigate one conspiracy that involves one defendant and one drug." 2008 WL 4401367 at *2.

Here, in contrast, Plaintiffs have at least a colorable basis for filing ten separate class actions against T-Mobile. Each class action corresponds to a separate state court action that T-Mobile itself has filed. Because this case is clearly distinguishable from *Freeman*, the Court will not expand upon a Sixth Circuit exception to the plain meaning of the CAFA text.

## III. Conclusion

Accordingly, it is hereby ORDERED that Plaintiffs' Motion to Remand [Doc. # 13] is GRANTED. The ten above-captioned actions are remanded to the Jackson County, Missouri Circuit Court.

                                                  s/ NANETTE K. LAUGHREY
                                                  NANETTE K. LAUGHREY
                                                  United States District Judge

Dated: January 27, 2011
Jefferson City, Missouri